IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISON
(JURY TRIAL DEMANDED)

| | |
|---|---|
| KYLE DENNY and<br>COURTNEY DENNY,<br>    *Plaintiffs* | )<br>)<br>)<br>) |
| VERSUS | ) CIVIL NO.: 1:19cv629 LG-RHW<br>)<br>) |
| OCEAN MARINE GROUP, INC.,<br>MICHAEL KEITH KING,<br>DON WESTON, and<br>KEVIN McLAUGHLIN,<br>    *Defendants* | )<br>)<br>)<br>)<br>) |

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
SEP 19 2019
ARTHUR JOHNSTON
BY _____ DEPUTY

## COMPLAINT

**COME NOW** the Plaintiffs, KYLE DENNY and COURTNEY DENNY, by and through undersigned counsel, and file this their COMPLAINT against the Defendants, OCEAN MARINE GROUP, INC., MICHAEL KEITH KING, DON WESTON, and KEVIN McLAUGHLIN, and for cause of action would show unto this Honorable Court as follows, to-wit:

## PARTIES

1. Plaintiff Kyle Denny is an adult resident citizen of Plaquemines Parish, Louisiana, of the full age of majority.

2. Plaintiff Courtney Denny is an adult resident citizen of Plaquemines Parish, Louisiana, of the full age of majority.

3. Defendant Ocean Marine Group, Inc., is a Mississippi corporation organized and operating pursuant to the Mississippi Business Corporation Act, Miss. Code Ann. §§ 79-4-1.01, et seq., and authorized to do and doing business in the State of

Mississippi, with its principal office address at 806 Canebrake Drive, Ocean Springs, MS 39564.

4. Defendant Michael Keith King is an adult resident citizen of Jackson County, Mississippi, of the full age of majority. Further, at all times relevant hereto Defendant King served as the Director and President of Ocean Marine Group, Inc.

5. Defendant Don Weston is an adult resident citizen of Lamar County, Mississippi, of the full age of majority. At all times relevant hereto, Defendant Weston was employed as the sales manager at Ocean Marine Group, Inc.

6. Defendant Kevin McLaughlin is an adult resident citizen of Mobile County, Alabama, of the full age of majority. At all times relevant hereto, Defendant McLaughlin was employed as a sales associate at Ocean Marine Group, Inc.

## JURISDICTION AND VENUE

7. Jurisdiction is proper in this Honorable Court pursuant to 28 U.S. Code § 1332, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and further there is complete diversity of citizenship between Plaintiffs and Defendants. Further venue is appropriate in this Honorable Court pursuant to 28 U.S. Code § 1391(b), as all tortious acts and/or omissions giving rise to this claim took place within this judicial district.

## FACTS

8. On or about April 21, 2018, Plaintiffs Kyle Denny and Courtney Denny traveled to Ocean Marine Group, Inc. (hereafter "Ocean Marine") in Gulfport, Mississippi, to purchase a new boat.

9. After looking at the Ocean Marine inventory, and after speaking with the salesman, Defendant Kevin McLaughlin, and the sale manager, Defendant Don Weston, Plaintiffs decided upon the purchase of a new 2017 Sportsman 247 Masters.

10. Defendants Don Weston and Kevin McLaughlin represented the 2017 Sportsman 247 Masters referenced hereinabove to be a "brand new" boat, and Plaintiffs relied upon those representations in making their decision to purchase the boat.

11. The Ocean Marine Buyer's Order, which itemizes Plaintiffs' purchase of the Sportsman 247 Masters, Yamaha F300XCA motor, and Sport Trail trailer, specifically notes that the aforementioned Sportsman 247 masters was a "new" boat. *See* Exhibit "A" – Buyer's Order.

12. Shortly after purchasing their "new" boat, Plaintiffs began to notice a number of issues with the boat that gave them cause for concern; more specifically, after taking the boat out several times from April 23, 2018 through May 4, 2018, Kyle Denny noticed a hole in the t-top from a weather module that had been removed (ostensibly by Ocean Marine); three (3) holes in the port side of the roof next to radar where something was removed and caulked to hide it instead of fixing it (ostensibly by Ocean Marine); a broken running light hanging on by wires; a chipped cabin light; spreader lights missing paint; and several issues with the hull of the boat, most notably being damage to the transom/transom guard.

13. Plaintiff Kyle Denny contacted Ocean Marine to address his concerns about the above-referenced issues with his "new" boat, at which time Don Weston advised Mr. Denny to take the boat out and continue using it, and further to make a punch list of any issues that needed to be looked at and fixed via a warranty claim.

14. On or about May 11, 2018, Plaintiffs drove the boat to Ocean Marine's Gulfport location to drop the boat off for its "20 hour service," at which time Plaintiffs met with Don Weston and a member of the service department who looked at the damage to the transom and determined that the repairs would need to be made through a warranty claim with Sportsman.

15. Several weeks after Sportsman picked the boat up from Ocean Marine, sometime in June 2018, the warranty manager of Sportsman called Plaintiff Kyle Denny and apologized for the delay in repairs to the boat; further, the warranty manager at Sportsman apologized that the *FIRST* repair to the transom had been subpar.

16. When Plaintiffs learned that there had been a prior warranty claim on the boat, they were very concerned, as they advised the warranty manager that they purchased the boat "new" and had never been advised of any previous warranty claims.

17. Plaintiffs requested photos of the prior faulty repair job; however the warranty manager at Sportsman advised that no pictures were taken and there was no formal record of any previous repairs.

18. Plaintiffs' boat was with the dealer and the manufacturer for over two months to have the transom repaired.

19. On or about July 18, 2018, when the boat made it back to the dealer from the manufacturer, Don Weston contacted Kyle Denny to ask that he come and take a look at the repair job, and Don Weston further advised Mr. Denny that he might not be happy with the repair.

20. On July 18, 2018, Plaintiffs traveled to Ocean Marine to inspect the boat, and they were very displeased with the repair job done by the manufacturer, as the repair was very obvious.

21. On that same day, July 18, 2018, Plaintiffs had a conference call with Don Weston and the warranty department at Sportsman, at which time the Sportsman warranty manager defended the repairs stating that their repair job was the only way to ensure that the transom would be strong and safe again due to the deep cracking.

22. When Plaintiffs confronted Sportsman about their concerns regarding the transom repair, Sportsman agreed that Plaintiffs could have the complained cosmetic issues fixed by a local repair shop of their choosing at Sportsman's expense.

23. After their July 18, 2018 meeting with Don Weston and their conference call with Sportsman, Plaintiffs were extremely frustrated as they felt they had been sold a "lemon" boat.

24. Plaintiffs were not able to take their boat from Ocean Marine on July 18, 2018, as the only issued that had been addressed was the damage to the transom, and all other repairs still had to be completed.

25. On or about July 27, 2018, Don Weston contacted Plaintiffs and advised that they could come and get the boat, as all repair items were fixed with the exception of the t-top; however due to the amount of time Plaintiffs had been without their "new" boat, Don Weston recommended that Plaintiffs pick up the boat and use it while the t-top was sent off for repair at a fiberglass shop.

26. Plaintiffs drove to Ocean Marine on July 27, 2018 to pick up the boat, and they drove directly from Ocean Marine Gulfport to Mobile, Alabama, so Plaintiffs could take a family outing in the boat.

27. When Plaintiffs took the boat out of the water on July 27, 2018, they discovered hard waterlines along the side of the boat and heavy staining that they could not scrub off.

28. Plaintiff Kyle Denny spent several weeks looking for local repair shops and ceramic coating centers to prepare a quote to Sportsman relative to the necessary cosmetic repairs; the quote included cleaning of any overspray and resin, paint repair, and re-wax/protective coating to be applied to the boat.

29. On or about August 16, 2018, Sportsman sent Kyle Denny an e-mail responding to his quote wherein Sportsman advised that they don't put any coating on top of the gelcoat other than wax; further, Sportsman advised that Kyle Denny should not be getting any water stains so long as the boat was properly cleaned after use.

30. On or about September 7, 2018, Kyle Denny thoroughly waxed and cleaned the boat in his driveway, at which time Kyle Denny discovered the remnants of outlines/stains from a "Silver Slipper Casino & Hotel" logo on both sides of the boat.

31. When Plaintiffs discovered the casino logos on their boat that had been removed and concealed, they were furious, as this confirmed their suspicions that Ocean Marine had materially misrepresented their boat as being "new."

32. After discovering the "Silver Slipper Casino & Hotel" logos on their boat, Plaintiffs did a significant amount of research to determine who may have had use and possession of their "new" boat before they purchased it.

33. After diligent search and inquiry, Plaintiffs learned that their boat had previously been used as a charter boat by Fisher-Man Guide Services, captained by Ronnie Daniels.

34. In fact, Ocean Marine and Silver Slipper Casino & Hotel are both sponsors of Fisher-Man Guide Services.

35. It is noteworthy that myriad Facebook posts and YouTube videos on the Fisher-Man Guide Services page; Ronnie Daniels's page; and the Ocean Marine page evidence extensive use of Plaintiffs' "new" Sportsman 247 Masters for charter operations for a period of approximately six (6) months beginning on July 27, 2016, prior to Plaintiffs' purchase of the boat that was sold to them as "new".

36. It is further noteworthy that Defendants Ocean Marine and Michael Keith King acknowledge in a July 27, 2016 Facebook post/comment exchange on the Fisher-Man Guide Services page that Ocean Marine allowed Ronnie Daniels to use the 2017 Sportsman 247 Masters as a charter fishing vessel.

37. Plaintiffs further learned that Captain Ronnie Daniels wrecked their "new" Sportsman 247 Masters while it was in his use and possession as a charter vessel, causing extensive damage to the transom, and thus requiring the first warranty claim that the Sportsman warranty manager previously mentioned to Plaintiffs, as noted hereinabove.

38. At all times relevant hereto, each of the named Defendants was aware that Plaintiffs' "new" Sportsman 247 Masters had been previously used by Captain Ronnie Daniels as a charter fishing vessel for his company, Fisher-Man Guide Services.

39. At all times relevant hereto, each of the named Defendants was aware that, while the subject boat was in his exclusive use and possession, Captain Ronnie Daniels

wrecked Plaintiffs' "new" Sportsman 247 Masters, causing extensive damage to the transom and engine, requiring substantial repairs and necessitating a warranty claim through Sportsman.

40. At all times relevant hereto, all Defendants knowingly and intentionally materially misrepresented unto Plaintiffs that they were purchasing a new boat in order to induce Plaintiffs into purchasing the Sportsman 247 Masters referenced herein; furthermore, none of the Defendants ever advised Plaintiffs at any time that the boat had been previously used as a charter boat, nor did any Defendant ever advise Plaintiffs that the boat had been wrecked requiring a warranty claim for transom repairs.

41. As a result of the above and foregoing willful, wanton, grossly negligent tortious acts and omissions of each and all of the Defendants, Plaintiffs have incurred substantial damages.

## COUNT I – FRAUD

42. At all times relevant hereto, each and all of the Plaintiffs had personal knowledge that Ocean Marine had permitted Captain Ronnie Daniels to use the subject Sportsman 247 Masters as a charter vessel for his charter fishing business, Fisher-Man Guide Services.

43. At all times relevant hereto, each and all of the Defendants had personal knowledge that Ocean Marine and Silver Slipper Casino and Hotel were sponsors of Captain Ronnie Daniels and Fisher-Man Guide Services.

44. At all times relevant hereto, each and all of the Defendants had personal knowledge that Captain Ronnie Daniels used the subject Sportsman 247 Masters

extensively as a charter fishing vessel for Fisher-Man Guide Services for a period to exceed six (6) months, beginning on or about July 27, 2016.

45. At all times relevant hereto, each and all of the Defendants had personal knowledge that Captain Ronnie Daniels was involved in a wreck in the subject Sportsman 247 Masters, causing extensive damage to the transom and engine requiring a warranty claim through Sportsman.

46. At all times relevant hereto, each and all of the Defendants knowingly and intentionally made material misrepresentations to Plaintiffs to induce them to purchase the subject Sportsman 247 Masters; more specifically, each and all of the Defendants represented the boat to Plaintiffs as "new."

47. After having numerous issues with the boat, and despite Plaintiffs addressing numerous concerns with Defendants that the boat may have been previously owned or operated, including but not limited to Plaintiffs learning of a previous warranty claim, each and all of the Defendants vigorously defended the position that the boat sold to Plaintiffs was a "brand new" boat.

48. Prior to their purchase of the subject boat, none of the Defendants ever revealed to Plaintiffs that their boat had ever been used, operated, chartered, or involved in a serious wreck causing substantial structural damage.

49. Plaintiffs suffered substantial damages, and continue to accrue substantial damages, as a result of the actual fraud and gross negligence of each and all of the Defendants, as shown hereinabove.

## COUNT II – NEGLIGENCE

50. Each and all of the Defendants owed a duty of care to Plaintiffs to give Plaintiffs truthful and accurate information about the condition, prior use, and prior damage to their boat prior to the sale of the boat, and at all times relevant thereafter.

51. Each and all of the Defendants breached the duty of care owed to Plaintiffs by misrepresenting the subject Sportsman 247 Masters to be "brand new," prior to the sale of the boat, and at all times relevant thereafter.

52. Plaintiffs suffered substantial damages, all of which were proximately caused by the actual fraud and negligence of Defendants as represented herein.

## COUNT III – PUNITIVE DAMAGES

53. Defendants are liable to Plaintiffs, jointly and severally, for punitive damages. Each and all of the Defendants committed tortious acts and/or omissions so willful, wanton, and reckless that they rise to the level necessary to provide for exemplary damages as contemplated in Miss. Code Ann. § 11-1-65. Those tortious acts and/or omissions that give rise to punitive damages include, but are not limited to, the following particulars:

   a. Knowingly and intentionally materially misrepresenting to Plaintiffs that the subject Sportsman 247 Masters that they purchased was a "brand new" boat;

   b. Failing to advise Plaintiffs that the subject Sportsman 247 Masters that they purchased had not only been used as a charter fishing vessel, but also had been wrecked, incurring substantial structural damage;

    c.    Failing to ever disclose to Plaintiffs, at any time relevant hereto, that their boat was a "used" boat that had been extensively operated as a charter vessel and wrecked.

## DAMAGES AND DEMAND

54. Plaintiffs have incurred substantial damages in connection with the above and foregoing claims relative to Defendants' fraud and negligence, including but not limited to substantial investments made toward the purchase of a used boat that had been represented to them to be a new boat; loss of use and enjoyment of their boat during long periods of repair; monies paid towards tax, tag, and title on a used boat that had been represented to them to be new; investments toward repairs of a new boat; insurance on a used boat that they have not been able to use and enjoy due to extensive repair time and concerns about the boat's structural integrity; emotional distress; etc. Based on the above and foregoing, Plaintiffs sue and demand recovery of damages as follows:

    (a)    Compensatory damages sufficient to compensate Plaintiffs for all damages incurred as addressed hereinabove;

    (b)    Punitive damages; more specifically, Plaintiffs should recover punitive damages and attorneys' fees for each of the Defendants' intentional, willful, and wanton acts and omissions referenced hereinabove;

    (c)    Pre-judgment and post-judgment interest.

55. Plaintiffs respectfully make demand for jury trial.

WHEREFORE, Plaintiffs pray that, after due proceedings had, there be judgment in their favor and against the Defendants in an amount necessary to reasonably

compensate them for the damages complained herein, for all costs of court, and for legal interest as provided by law.

Respectfully submitted,

BY: KYLE DENNY and COURTNEY DENNY, Plaintiffs

BY: *[signature]*
REED S. BENNETT (MS Bar # 103233)
Law Offices of Reed S. Bennett, PLLC
2501 14th Street, Suite 211
Gulfport, MS 39501
(t) 228-865-1008
(f) 228-865-1009

*[signature]*
CHRISTOPHER G. HOLT (MS Bar #9371)
Attorney at Law
2501 14th Street, Suite 211
Gulfport, MS 39501
(t) 228-865-7646
(f) 228-868-5475